IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MICROSEISMIC, INC.,                    §
                                       §
                Plaintiff,             §
                                       §
VS.                                    §   CIVIL ACTION H-12-0118
                                       §
TRAC CHARITABLE REMAINDER TRUST        §
and CHARLES B. ARCHAMBEAU,             §
                                       §
                Defendant.             §

### OPINION AND ORDER OF DISMISSAL

Pending before the Court in the above referenced cause, seeking a declaratory judgment under 28 U.S.C. § 2201 that Plaintiff MicroSeismic, Inc. ("MicroSeismic") complied with a stock repurchase agreement and is not liable to Defendants TRAC Charitable Remainder Trust ("TRAC") and Charles B. Archambeau ("Archambeau") for any additional payments and that Defendants have violated the representations and warranties that they made in the repurchase agreement, is Defendants' motion to dismiss for lack of personal jurisdiction (instrument #10).

### Factual Allegations

MicroSeismic's Original Complaint (#1) explains that it is a Houston-based geophysical services company that pioneered the use of microseismic monitoring in hydraulic fracturing, by which operators are able to detect patterns of fluid movement, fracture development or compaction to improve reservoir management. Archambeau, a resident of Colorado, contributed to developing a

-1-

technology known as Passive Seismic Transmission Tomography ("PSTT").

MicroSeismic was created in January 2003 to commercialize and further develop PSTT. MicroSeismic then bought the exclusive rights to PSTT from Archambeau's company, Technology Research Associates Corporation ("Associates"),[1] a Colorado corporation, for 15,000 shares of MicroSeismic stock and $450,000 in cash. MicroSeismic then hired Archambeau as a consultant on an hourly basis. Associates also developed Passive Seismic Emission Technology ("PSET") for MicroSeismic, and PSET became MicroSeismic's core technology. Archambeau's employment by MicroSeismic terminated in May 2007, after which all further development of the technologies proceeded in-house without Archambeau's involvement.

In 2010 Archambeau offered to sell back his 15,000 shares in the company to MicroSeismic, which agreed to buy Archambeau's shares along with other shares held by other common stockholders (thus totaling 32,000 shares) at $40 per share. MicroSeismic and the selling stockholders executed a written Repurchase Agreement (Ex. A to #1), which Archambeau signed as trustee on behalf of TRAC (which held the 15,000 shares). After the repurchase, MicroSeismic

---

[1] While the parties refer to the corporation as TRAC, to avoid confusion with the TRAC Trust created in March 2010, in this order the Court designates the corporation, which was one of the original founders of MicroSeismic and which received MicroSeismic stock in return for PSTT, as "Associates."

states that it resold most of the shares to other investors at the same price.

MicroSeismic contends that the selling stockholders provided all material information known to the company and, as reflected in paragraph 3(d)[2] the Repurchase Agreement (Ex. A to #1), represented that they understood the risks of the transactions and were willing to bear the risk of loss, that they "fully considered" the agreed-upon $40 per share price might be below the market value, and that MicroSeismic had been approached by others possibly interested in purchasing the company.

Two years after Archambeau signed the Repurchase Agreement, on November 15, 2010, Archambeau sent a letter (Ex. B to #13) to MicroSeismic canceling his March 2010 sale of stock back to MicroSeismic and seeking millions of dollars in additional

---

[2] Paragraph 3(d) of the Repurchase Agreement, Ex. A to #1, recites,

Such Seller has sufficient experience in financial and business matters to be capable of evaluation the merits and risks of the transfer of such Seller's Shares to the Company and to make an informed decision relating thereto.  Such Seller acknowledges that (i) Seller has fully considered that the Price Per Share of the Seller's Shares may be below fair market value and that the Price Per Share may bear no relation to the assets, book value or net worth of the Company, (ii) a substantial minority discount applies to the Price Per Share of the Seller's Shares such that the price may be below fair market value, (iii) Such Seller has fully considered the value of such Seller's Shares may increase significantly following the sale and purchase of such Seller's Shares by the Company and Seller is willing to bear the economic loss related to such increase and (iv) Seller understands that the Company has been approached by parties that have expressed interest in the possible purchase of the Company, however, no offers to purchase have been made or indications that an offer to purchase is imminent as of the date hereof.  [*sic*]

compensation.   The letter accused MicroSeismic and others of withholding key information and undervaluing Associates' shares in the sale of Defendants' stock to MicroSeismic, sought a settlement of $7.4 million based on a subsequent sale by a MicroSeismic shareholder and another investor at a higher price, and threatened legal action.   MicroSeismic argues that Archambeau's threats violate his earlier representations and warranties in the Repurchase Agreement and are expressly precluded by the indemnification provision in paragraph 8,[3] as well as the related Release and Waiver (Ex. C to #1) signed by Archambeau as part of the transaction.

Defendants claim that the letter Archambeau wrote to MicroSeismic indicated that Archambeau believed that there was a subsequent transaction in which MicroSeismic sold the repurchased shares of stock at a price much higher than $40 per share, i.e., nearly $740 per share.   MicroSeismic's attorney responded in December 2011 stating that Archambeau's beliefs were unfounded.   On January 12, 2012, MicroSeismic filed the instant declaratory

---

[3] Paragraph 8 of the Repurchase Agreement, Ex. A to #1, provides,

Indemnification.  Each Seller, severally and not jointly, shall indemnify and hold harmless the Company, its successors and assigns, and the respective officers, directors, employees and agents of each of the foregoing, from and against any and all losses, claims, damages, liabilities, payments, obligations and expenses (including reasonable attorneys' and accountants' fees) sustained, suffered or incurred by any such person or entity arising out of or resulting from the breach of any representation, warranty or covenant of such Seller contained in this Agreement.

judgment action.

## Personal Jurisdiction

When a defendant files a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006), *citing Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982).[4]   At the pretrial stage of litigation, if the district court does not conduct a hearing on personal jurisdiction, the plaintiff need only present a prima facie case of personal jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Felch v. Transportes Lar-Mex S.A. DE CV*, 92 F.3d 320, 325 (5th Cir. 1996); *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).   Proof by preponderance of the evidence is not required. *Johnston*, 523 F.3d at 609.[5]   When a defendant disputes

_____

[4] "Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law . . . ." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993).  Where the facts are disputed, the party seeking to invoke the court's jurisdiction bears the burden of establishing sufficient contacts with the forum state by the nonresident defendant to invoke the court's jurisdiction. *Bullion v. Gillespie*, 895 F.2d 213, 216-17 (5th Cir. 1990).

[5] As the Fifth Circuit explained in *Walk Haydel & Associates, Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 241-42 (5th Cir. 2008),

Ultimately, the plaintiff must show by a preponderance of the evidence that jurisdiction is proper.  Often, the determination of whether this standard is met is

factual bases for personal jurisdiction, the district court may consider the record before it, including "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002)(*quoting Thompson v. Chrysler Motors Corp.*, 755 F.3d 1162, 1165 (5th Cir. 1985)), *cert. denied*, 540 U.S. 814 (2003); *Kelly Law Firm, P.C. v. An Attorney for You*, 679 F. Supp. 2d 755, 762 (S.D. Tex. 2009).  The court has discretion as to the type and amount of discovery it will allow, but unless there is a full and fair hearing, it should not act as a factfinder and must construe all disputed facts in favor of the plaintiff.  *Walk Haydel*, 517 F.3d at  241.  On a motion to dismiss under Rule 12(b)(2), uncontroverted allegations in

---

resolved at trial along with the merits.  This is especially likely when the jurisdiction issue is intertwined with the merits and therefore can be determined based on jury fact findings.  In this situation it is often 'preferable that [the jurisdictional] determination be made at trial, where a plaintiff may present his case in a coherent, orderly fashion and without the risk of prejudicing his case on the merits.'  But this court has said that after a pretrial evidentiary hearing confined to the jurisdictional issue, where both sides have the opportunity to present their cases fully, the district court can decide whether the plaintiff has established jurisdiction by a preponderance of the evidence. [footnotes omitted]

The panel further opined, *id.* at 241.

If the court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss.  Any greater burden such as proof by a preponderance of the evidence would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavit and supporting materials.

plaintiff's complaint are taken as true, and conflicts between facts in the parties' affidavits must be resolved in plaintiff's favor for purposes of the *prima facie* case of personal jurisdiction. *Johnston*, 523 F.3d at 609; *Kelly Law Firm*, 679 F. Supp. 2d at 762; *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). Nevertheless, the court is not required to credit conclusory allegations even if they are uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

The court must find that it has personal jurisdiction over that defendant before it makes any decision on the merits. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623, n.2 (5th Cir. 1999)("Personal jurisdiction is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication.").

Under the federal rules, except where a federal statute provides for broader personal jurisdiction, the district court's personal jurisdiction is coterminous with that of a court of general jurisdiction of the state in which the district court sits. *Submersible Sys., Inc. v. Perforadora Cent.*, *S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir. 2001). A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the forum state's long-arm statute confers personal jurisdiction over that nonresident defendant and if the exercise of personal

jurisdiction satisfies due process under the United States Constitution. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009), *citing Moncrief Oil Int'l, Inc. v. OAO Gasprom*, 481 F.3d 309, 311 (5th Cir. 2007). The Texas long-arm statute, Texas Civil Practice and Remedies Code §§ 17.041-.045,[6] extends jurisdiction to the limits of the federal due process. *Schlobohm v. Schapiro*, 784 S.W. 2d 355, 357 (Tex. 1990); *Gonzalez v. Bank of America Ins. Servs., Inc.*, No. 11-20174, 2011 WL 6156856 *3 (5th Cir. Dec. 12, 2011), *citing Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008). Thus a plaintiff in a diversity action in federal court in Texas[7] need only demonstrate that (1) the defendant purposely availed himself of the benefits and protections of the forum state by establishing that the defendant had minimum contacts with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Alpine View Co., Ltd. v. Atlas Copco AB*, 205

---

[6] Section 17.042 provides in relevant part,

In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; (2) commits a tort in whole or in part in this state; or (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

[7] *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)("Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis.").

F.3d 208, 214 (5th Cir. 2000); *Moncrief Oil Int'l, Inc. v. OAO Gasprom*, 481 F.3d 309, 311 (5th Cir. 2007).

Personal jurisdiction can be either specific or general jurisdiction. *Mink v. AAAA Develop., LLC.*, 190 F.3d 333, 336 (5th Cir. 1999). "Where a defendant 'has continuous and systematic general business contracts' with the forum state, the court may exercise 'general jurisdiction over any action brought against the defendant [regardless of whether the action is related to the forum contacts]." *Luv N' Care*, 438 F.3d at 469, *citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). *See also Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)("General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed."), *cert. denied*, 531 U.S. 917 (2000). "[T]he minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992). "[V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 610.[8]

---

[8] In *Johnston*, the Fifth Circuit discussed how extremely difficult it is to establish general jurisdiction over a nonresident defendant. 523 F.3d at 610-11. The panel examined the Supreme

If the defendant has relatively few contacts, the court may still exercise personal jurisdiction over that party if the suit "'arises out of' or is related to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414 & n.8.  Furthermore the Fifth Circuit has concluded that specific jurisdiction is "a claim-specific inquiry:  'A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.'"  *McFadi*n, 587 F.3d at 759, *quoting Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).  Moreover, the Fifth Circuit has established a three-step analysis for determining whether specific jurisdiction

---

Court's ruling in *Helicopteros*, 466 U.S. at 418-19, in which it found that defendant's contacts with Texas purchasing helicopters, spare parts, and accessories for more than $4 million over a six-year period from a Texas company, sending management and maintenance personnel to Texas for technical consultations and prospective pilots to Texas for training, and receiving a check for more than $5 million drawn on a Texas bank were insufficient to support personal jurisdiction.  Among other cases from this Circuit, *Johnston* cited *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003), in which the Fifth Circuit concluded that general jurisdiction did not exist even though the defendant regularly arranged and received interline shipments to and from Texas and sent sales people to Texas to develop business, negotiate contracts and service national accounts; *Wilson v. Belin*, 20 F.3d 644, 651 (5th Cir. 1994)("Even if [the defendant's] contacts with Texas via his short-lived malpractice insurance arrangement through a Texas law firm and his multi-year *pro bono* association with the historical society were arguably continuous, we hold that they were not substantial enough to warrant the imposition of general personal jurisdiction over him."); *Access Telecom*, 197 F.3d at 717 (in order to confer general jurisdiction it is not sufficient that a corporation do business in Texas; it must have a business presence in Texas); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 218 (5th Cir. 2000)(holding that general jurisdiction did not exist where the defendant occasionally sold products to entities in Texas that used the defendant's products for projects in Texas and the defendant's employees made field visits to Texas between December 1992 and December 1993). *Johnston*, 523 F.3d at 610-12 (concluding that Multidata's sale of approximately $140,000 worth of goods over a five-year period to Texas customers and its employees' occasional travels to Texas to service equipment or attend trade conventions did not support general jurisdiction over Multidata).

exists:  "'(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there[9]; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts[10]; and (3) whether the exercise of personal jurisdiction is fair and reasonable.'" *Seiferth*, 472 F.3d at 271, *quoting Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002).  The minimum contacts review is fact-intensive and no single contact is decisive; "the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court."  The defendant 'must not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third party.''" *McFadin*, 587 F.3d at 759, *citing Luv N' Care*, 438 F.3d at 470 (*citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)), and *Electrosource, Inc. v. Horizon Battery Tech., Ltd.*, 176 F.3d 867,

---

[9] Purposeful availment requires a defendant to seek some benefit, advantage or profit by "availing" itself of the jurisdiction. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W. 3d 777, 785 (Tex. 2005).

[10] The litigation must also "result from the alleged injuries that 'arise out of or relate' to those activities." *Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C.*, 815 S.W. 2d 223, 228 (Tex. 1991), *citing Burger King*, 471 U.S. at 472.  For specific jurisdiction, there "must be a substantial connection" between the nonresident defendant's contacts with the forum state and the "operative facts of the litigation."  *Guardian Royal*, 815 S.W. 2d at 229-33.

871-72 (5th Cir. 1999)(*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).  Thus specific jurisdiction may not be based upon the mere fortuity that a plaintiff is a Texas resident.  *Santander Consumer USA, Inc. v. Shults Ford, Inc.*, Civ. A. No. 3:11-CV-614-L, 2011 WL 2601520, *4 (N.D. Tex. June 30, 2011), *citing Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986).

Once the plaintiff has established that the defendant has minimum contacts with the forum state, the burden shifts to the defendant to show that assertion of jurisdiction would be unfair. *Walk Haydel*, 517 F.3d at 245.  In determining whether the exercise of jurisdiction is fair and reasonable, the court examines five factors:  "'(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies.'" *McFadin*, 587 F,3d at 759-60, *quoting Luv N' Care*, 438 F.3d at 473. If the plaintiff fails to establish the existence of minimum contacts with the forum state, the court need not reach the question of whether personal jurisdiction would offend traditional notions of fair play and substantial justice.  *Renoir v. Hantman's Associates, Inc.*, 230 Fed. Appx. 357, 360 (5th Cir. 2007).

The mere fact that a party contracted with a resident of Texas is insufficient to establish minimum contacts necessary to support

personal jurisdiction. *Moncrief Oil Int'l, Inc. v. OAO Gasprom*, 481 F.3d 309, 311 (5th Cir. 2007)("Merely contracting with a resident of the forum state does not establish minimum contacts."); *Cardinal Health Solutions, Inc. v. St. Joseph Hosp. of Port Charlotte, Fla. Inc.*, 314 Fed. Appx. 744, 745 (5th Cir. 2009). Nor does the exchange of communications in the developing and performing of a contract constitute purposeful availment of the benefits and protections of the laws of Texas. *Id.; id.; Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 344 (5th Cir. 2004). "[Purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction." *Helicopteros*, 466 U.S. at 417. Moreover jurisdiction may not be based on the fortuity of one party residing in the forum state. *McFadin*, 587 F.3d at 760. Mere foreseeability, by itself, does not create personal jurisdiction. *Moncrief Oil*, 481 F.3d at 313.

A choice of law provision may be a relevant factor for determining purposeful activity directed toward the forum state, but is not necessarily determinative, and standing alone, it is insufficient to confer jurisdiction. *Satander Consumer USA, Inc. v. Shults Ford, Inc.*, 2011 WL 2601520 at *4, *citing Petty-Ray Geophysical*, 954 F.2d at 1069, and *Burger King*, 471 U.S. at 482. The court must review the quality and nature of the defendant's activities in the forum in their totality to decide whether the

defendant purposely availed itself of the privileges offered by the forum state.  *Id., citing Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999).

Personal jurisdiction can be waived by an enforceable forum selection clause in which the parties consent to personal jurisdiction in a specified forum.  *Burger King*, 471 U.S. at 473 n.14.  Federal law governs the enforceability of forum selection and choice of law clauses.  *Haynesworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 1997), *citing  M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. 1 (1972), and *Scherck v. Alberto-Culver Co.*, 417 U.S. 506, 518-21 (1974).  Forum selection clauses are presumed to be valid.  *M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. at 9; *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 537-38 (1995).  A party seeking to bar enforcement of a forum selection clause bears a heavy burden of demonstrating that the clause is unreasonable under the circumstances, i.e., "that the clause results from fraud or overreaching, that it violates a strong public policy, or that the enforcement of the clause deprives the plaintiff of his day in court.".  *Bremen*, 407 U.S. at 12-13, 15, 18; *Mitsui & Co. (USA), Inc. v. MIRA M/V*, 111 F.3d 33, 35 (5th Cir. 1997).

Under the fiduciary shield doctrine, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over the individual

though the state has *in personam* jurisdiction over the corporation." *Stuart v. Spademan*, 777 F.2d 1185, 1197 (5th Cir. 1985)(fiduciary shield that cloaks corporate agents and officers generally prevents a court from attributing actions made on behalf of the corporation to the agents or officers who have performed them).

### Defendants' Motion to Dismiss (#10)

Defendants claim that the only basis for personal jurisdiction in Texas alleged by MicroSeismic in its complaint is the following bare-bones recitation of the legal standard governing personal jurisdiction:

> 7. The Court has personal jurisdiction over Defendants because they purposefully availed themselves of the State of Texas and this judicial district and should reasonably have expected their actions to have consequences within the State of Texas and this judicial district. Furthermore, Defendants have threatened suit against MicroSeismic, which maintains its principal place of business in this judicial district.

They insist that MicroSeismic fails to allege facts showing how Defendants have purposely availed themselves of the State of Texas or why they should have reasonably expected their actions to have consequences in Texas.

As for Archambeau's letter allegedly "threatening suit," the Fifth Circuit has held that a cease and desist letter sent by a non-resident to a Texas company does not constitute purposeful availment. *Stroman Realty, Inc. v. Wercinski ("Stroman I")*, 513 F.3d 476, 484 (5th Cir. 2008)(where the totality of nonresident

defendant's contacts with Texas was a cease and desist order and correspondence with real estate company's attorneys, defendant could not have reasonably anticipated being haled into federal court in Texas), and *Antt ("Stroman II")*, 528 F.3d 382 (same).

Regarding Archambeau's role as a consultant for MicroSeismic until 2007, Texas courts have ruled that a non-resident's employment with a Texas company does not create sufficient contacts for general jurisdiction. *Information Services Group, Inc. v. Rawlinson*, 302 S.W. 3d 392, 404 (Tex. App.--Houston [14[th] Dist.] 2009); *Gonzalez v. AAG Las Vegas, LLC*, 317 S.W. 3d 278, 282-86 (Tex. App.--Houston [1[st] Dist.] 2009, pet. denied); *Rushmore Inv. Advisors, Inc. v. Frey*, 231 S.W. 3d 524, 529 (Tex. App.--Dallas 2007, no pet.); *Gustafson v. Provider HealthNet Servs., Inc.*, 118 S.W. 3d 479, 483 (Tex. App.--Dallas 2003, no pet.); *Rittenmeyer v. Grauer*, 104 S.W. 3d 725, 733 (Tex. App.--Dallas 2003, no pet.). Moreover the fact that Archambeau's employment ended nearly five years before this action was filed works against the Court's having general jurisdiction over it. *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d at 717 ("General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed.").

Defendants insist that MicroSeismic has not established the kind of substantial, continuous, and systematic general business

contacts with Texas necessary to support this Court's exercise of general personal jurisdiction over Defendants.

Defendants also contend that MicroSeismic has failed to allege any facts showing that this lawsuit arises out of Defendant's contacts with Texas to support the Court's exercise of specific jurisdiction over them.

### MicroSeismic's Response (#13)

MicroSeismic points to three specific and independent bases, sufficient to establish at least a prima facie showing for the Court's exercise of specific personal jurisdiction over Defendants: (1) Defendants contracted with MicroSeismic in two Shareholder Agreements (Exs. 2 (Jan. 23, 2010) and 4 (March 6, 2010) to #13), ¶¶ 11.2 in each) for the application of Texas law and an arbitration forum in this judicial district[11]; (2) Defendants deliberately helped to found MicroSeismic in Houston, Texas as its headquarters and base of operations to avail themselves of the privileges and benefits of doing business in Texas[12] and Archambeau

---

[11] The two Shareholder Agreements, the first signed by Archambeau and his wife in their individual capacities to transfer ownership of the 15,000 shares from Associates to Archambeau, the latter by Archambeau as trustee to transfer the shares to the TRAC Trust, were executed prior to and are separate from and independent of the Repurchase Agreement that gave rise to and is the focus of this action. Thus the Shareholder Agreements' choice of law and forum selection clauses are not relevant here. The Repurchase Agreement does not have a choice of law or forum selection clause.

[12] Supported by an affidavit (Ex. 1 to #13) of the first Executive Chairman and member of the Board of Directors of MicroSeismic, Dr. Peter M. Duncan, and deposition excerpts (Ex. 7) of Archambeau, MicroSeismic explains that Archambeau and other investors chose Houston because Duncan (1) lived and worked there, (2) had substantial business contacts there and in

was in Houston at the company's inception; and (3) Defendants had numerous and ongoing contacts with MicroSeismic in Texas directly related to the agreements at issue.

Regarding the third basis, MicroSeismic claims that Defendants availed themselves of the privileges and benefits of doing business in Texas through the following contacts: Archambeau went to Houston in 2003 to discuss the company's formation and initial operations with Duncan and to instruct the employees on the use of the technology and software; Archambeau stayed in contact with MicroSeismic over seven years through numerous phone calls and letters between Archambeau in Colorado and Duncan in Houston; Archambeau worked as a paid consultant for MicroSeismic between 2003-07; two Associate employees spent weeks at MicroSeismic's headquarters to provide additional consulting services; Archambeau sent his "threatening" November 2011 letter to Houston, asserting intentional tortious acts committed by company officials injured his interests in Texas, i.e., his investment in MicroSeismic.

Furthermore MicroSeismic argues that Defendants have failed to show any fundamental unfairness if this Court exercises that jurisdiction. They do not state how they would be burdened by litigation in Houston, why the interests of Texas do not support

_____

Texas, including customers in the oil industry, from which MicroSeismic could build a client base, and (3) wanted to locate the company in Houston. During his deposition Archambeau further explained that they recruited Duncan because Duncan was a prominent Ph.D. geophysicist, president of the American Society of Exploration Geophysicists. Ex. 1 at p.20-21.

jurisdiction in Texas, why resolution would be more efficient elsewhere, or why another state would have a substantial policy interest in this dispute.

### Defendants' Reply (#14)

Arguing for dismissal of this action based on a lack of personal jurisdiction, Defendants reply that (1) Plaintiff has not and cannot establish continuous and systematic contacts to support the exercise of general personal jurisdiction over Defendant here; (2) the forum selection clauses argument fails because these clauses were in Shareholders' Agreements unrelated to the Repurchase Agreement in dispute here and this suit does not arise from the Shareholders' Agreements; (3) Plaintiff fails to meet its burden of alleging facts that would support personal jurisdiction over each Defendant; and (4) forcing Defendants to litigate this action in Texas offends traditional notions of fair play and substantial justice.

The Court agrees with Defendants that Plaintiffs have not shown that Defendants had continuous and systematic contacts with Texas and thus the Court does not have general personal jurisdiction over them.

Defendants insist that Plaintiff's contention that Archambeau and the Trust consented to personal jurisdiction in Texas based on the forum selection clauses in the Shareholders' Agreements is erroneous for two reasons. First, this suit did not arise out of

the Shareholders' Agreements.   As reflected in the Complaint, this suit expressly arises out of the Repurchase Agreement, which contains no such clause, and it seeks a declaration of the parties' rights and obligations under only that Repurchase Agreement, specifically that MicroSeismic complied with the terms of the Repurchase Agreement, in an effort to prevent Defendants' accusations from negatively affecting MicroSeismic's ongoing business.[13] *Radio Systems Corp. v. Accession, Inc.*, 638 F.3d 785, 792–93 (Fed Cir. 2011)(opining, "Because this action did not arise out of the subject matter of the confidential disclosure agreement, the forum selection clause of that agreement has no effect on the question of personal jurisdiction," and dismissing defendant for lack of personal jurisdiction).   Defendants further point out that the forum selection clauses (¶ 11.2 in each Shareholders' Agreement) mandate venue in Houston, Texas for **binding arbitration**. That MicroSeismic filed a lawsuit in this court is contrary its argument that the clause applies to this suit.   Second, Defendants highlight the fact that the Repurchase Agreement not only did not have a Texas forum selection clause, but its choice of law provision states that the Repurchase Agreement is to be construed under the laws of Delaware.   A choice of law provision designating

---

[13] *See Safety-Kleen Systems, Inc. v. McCoy Freightliner, Inc.*, No. 4:10-cv-608, 2011 WL 665812, *4 (E.D. Te. Jan 21, 2001)("[F]orum selection clauses must cover the dispute at hand in order to effect a waiver of personal jurisdiction."), *report and recommendation adopted*, 2011 WL 665854 (E.D. Tex. Feb. 14, 2011).

the law of a different state, "while not necessarily determinative" of jurisdiction, is relevant to a finding that the parties did not purposefully direct their activities toward the forum state, especially where the defendant has only attenuated contacts with Texas. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1069 (5th Cir.), *cert. denied*, 506 U.S. 1992); *Electrosource,Inc. v. Horizon Battery Technologies, Ltd.*, 176 F.3d 867, 873-74 (5th Cir. 1999). Furthermore the merger clause in the Repurchase Agreement at ¶ 12, stating that the agreement represents the parties' entire agreement relating to Plaintiff's repurchase of Associates' shares and that it supersedes any prior negotiations regarding that repurchase, forecloses Plaintiff's assertion the forum selection clauses in the Shareholders' Agreement applies to this suit.

Defendants examine three facts alleged by MicroSeismic as minimal contacts supporting specific personal jurisdiction over Defendant TRAC: (1) the Shareholder Agreement signed by Archambeau as trustee of the Trust in March 2010; (2) a stock certificate that Plaintiff issued to TRAC on March 18, 2010 (Ex. 5 to #13); and (3) the Repurchase Agreement selling the shares owned by Associates back to the company.

Defendants point out that during his deposition, Archambeau explained that TRAC was created in March 2010 for the purpose of receiving the funds from the sale of Associates' stock. Archambeau

Dep., Ex. 1 to #14 at p. 33, ll. 4-24.  Therefore TRAC, the Trust, could not have any "ongoing" contacts with Texas before March 2010. Nor has Plaintiff alleged any physical presence of TRAC in Texas nor any purposeful contacts by it with Texas that would constitute "doing business" in Texas to establish personal jurisdiction over TRAC here.

Nor does Plaintiff allege any facts establishing jurisdiction over Archambeau individually, but only over his actions in his capacity as a corporate officer of Associates.[14]  Archambeau Dep., Ex. 1 to #14 at p. 15, l.3-p. 16, l.10; *see, e.g.,* Archambeau's Nov. 15, 2011 letter (Ex. B to #1), expressly written in his capacity as President of Associates.[15]  Archambeau at all times interacted with MicroSeismic in his capacity as president of Associates.  *Id.*  The fiduciary shield doctrine prevents the Court from exercising personal jurisdiction over Archambeau in that capacity.  It was Associates, not Archambeau, that was a founding shareholder of MicroSeismic and that received the MicroSeismic stock in partial return for PSTT.  *Id.* at p. 16, l. 15-p.17, l. 1. Archambeau individually never held any shares of MicroSeismic stock.  *Id.* at p. 61, ll. 11-13.

Moreover unilateral acts of Plaintiff in carrying out the terms of the contract, e.g., Duncan's issuance of the stock

---

[14] See footnote 1.

[15] *Id.*

certificate to TRAC from Houston, Texas and initiation of a wire transfer from MicroSeismic's headquarters in Houston, are not sufficient to support personal jurisdiction over Defendants in Texas.  It is the acts of the nonresident **defendant**, not of the plaintiff, that are relative to the minimum contacts analysis. Thus MicroSeismic's claim that Archambeau's purported injuries relating to the Repurchase Agreement, i.e., Archambeau's letter accusing MicroSeismic's officers and other investors of committing torts in Texas, does not confer jurisdiction over the nonresident Defendants.  The Texas long-arm statute specifically applies to a "nonresident" who "commits a tort in whole or in part" in Texas. Tex. Civ. Prac. & Rem. Code § 17.042(2).  The few contacts with Texas alleged by MicroSeismic, e.g., phone calls and letters, are not the source of the litigation.

Finally Defendants maintain that exercising personal jurisdiction over them would offend traditional notions of fair play and substantial justice.  Forcing Archambeau, a 79-year-old Colorado resident, to defend himself over 1,000 miles away in Houston, Texas and to bear the expense, inconvenience, burden, and travel requirements is not fair.  Nor, they argue, does Texas have an interest in resolving this contract dispute where the closing of the contract took place in Boston, Massachusetts, MicroSeismic was incorporated in Delaware, and no performance under the contract was to occur in Texas.   They insist that there is no nexus between

this lawsuit and Texas and maintenance of this suit is Texas does not comply with constitutional due process.

### Court's Decision

After reviewing the record and the applicable law, the Court agrees with Defendants that Plaintiff has failed to allege minimum contacts sufficient to support personal jurisdiction over them in Texas.   While the Court finds weak and unpersuasive Defendants' arguments that due process would be violated by keeping the suit here, where Plaintiff fails to allege a prima facie case of minimum contacts supporting personal jurisdiction, the Court does not have to reach the constitutional argument.  *Renoir*, 230 Fed. Appx. at 360.

Accordingly, the Court

ORDERS that Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED and this case is DISMISSED without prejudice pursuant to Rule 12(b)(2).

**SIGNED** at Houston, Texas, this  20th  day of  July , 2012.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-24-